UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIKE GRAHAM, SOUMYA VEMURI, and VENKATA CHOTNEERU, Derivatively on Behalf of BLUEBIRD BIO, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NICK LESCHLY, MARK VACHON, JOHN O.AGWUNOBI, WENDY L. DIXON, DANIEL S. LYNCH, WILLIAM R. SELLERS, DENICE TORRES, DOUGLAS A. MELTON, PH.D., AND CHIP BAIRD, <br><br> Defendants, <br><br> -and- <br><br> BLUEBIRD BIO, INC., <br><br> Nominal Defendant. | Civil Action No.: <br><br><br> **JURY TRIAL DEMANDED** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiffs Mike Graham, Soumya Vemuri, and Venkata Chotneeru (together, "Plaintiffs"), by and through their undersigned counsel, bring this shareholder derivative action on behalf of nominal defendant bluebird bio, Inc. ("bluebird" or the "Company") and against certain current and former officers and directors of the Company for breaches of fiduciary duties and violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act") during the period from May 11, 2020 and November 4, 2020 (the "Relevant Period"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which included review and analysis of: (a) regulatory filings made by bluebird with the United States Securities and Exchange Commission

("SEC"); (b) press releases and media reports issued by and disseminated by the Company; (c) analyst reports concerning bluebird; (d) pleadings, papers, and any documents filed with and publicly available from a related pending securities fraud class action captioned *Leung v. Bluebird Bio, Inc., et al.*, 1:21cv10335, pending in the United States District Court for the District of Massachusetts (the "Securities Class Action"); and (e) other publicly available information regarding the Company.

## **NATURE OF THE ACTTION**

1.      This is a stockholder derivative action asserting claims for breach of fiduciary duty and violations of Sections 10(b) and 21D of the Exchange Act brought on behalf of nominal defendant bluebird against certain current and former officers and members of the Company's Board of Directors (the "Board").

2.      bluebird is a biotechnology company that engages in researching, developing, and commercializing transformative gene therapies for severe genetic diseases and cancer. The Company's gene therapy programs include, among others, LentiGlobin (bb1111) for the treatment of sickle cell disease ("SCD").

3.      In May 2020, in the midst of the COVID-19 pandemic, the Company announced that it expected to submit a U.S. Biologics Licensing Application ("BLA") to the U.S. Food and Drug Administration ("FDA") for LentiGlobin for SCD in the second half of 2021.

4.      Throughout the Relevant Period, the Individual Defendants (as defined herein) made false and/or misleading statements and/or failed to disclose that: (a) data supporting the Company's BLA submission for LentiGlobin for SCD was insufficient to demonstrate drug product comparability; (b) the Company downplayed the foreseeable impact of disruptions related to the COVID-19 pandemic on the Company's BLA submission schedule for LentiGlobin for

SCD, particularly with respect to manufacturing; (c) as a result of all the foregoing, it was foreseeable that the Company would not submit the BLA for LentiGlobin for SCD in the second half of 2021; and (d) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On November 4, 2020, the Company disclosed that it would no longer apply for FDA approval of its LentiGlobin product as a treatment for SCD in the second half of 2021 as expected. Instead, citing "feedback" from the FDA requiring the Company to provide additional data "to demonstrate drug product comparability" for LentiGlobin for SCD, "alongside COVID-19 related shifts and contract manufacturing organization COVID-19 impacts," bluebird adjusted its submission timing to late 2022.

6.      On this news, the Company's stock price fell $9.72 per share, or 16.6%, to close at $48.83 per share on November 5, 2020.

7.      As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, bluebird has sustained damages as described below.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f). The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367 (a) because the state law claims form part of the same case or controversy. This action is not a collusive action designed to confer jurisdiction on the court of the United States that it would not otherwise have.

9.      The Court has jurisdiction over each Individual Defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

The Court has personal jurisdiction over the nominal defendant because bluebird is authorized to do business in this state, has consented to service in this state and its principal place of business is within this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the defendants either resides in or maintains offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to bluebird occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

11.     Moreover, the Company's Bylaws contain the following forum selection clause:

> Exclusive Forum. Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for any state law claims for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's Certificate of Incorporation or By-laws, or (iv) any action asserting a claim governed by the internal affairs doctrine. **Unless the Corporation consents in writing to the selection of an alternative forum, the United States District Court for the District of Massachusetts shall be the sole and exclusive forum for resolving any complaint asserting a cause of action arising under the Securities Act of 1933, as amended**. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 11.

(Emphasis added.)

## PARTIES

12.     Plaintiff Mike Graham has owned shares of bluebird continuously since December of 2014, and, therefore, held shares at the time of the wrongdoing alleged herein.

13.     Plaintiff Soumya Vemuri has owned shares of bluebird continuously since March

of 2020, and, therefore, held shares at the time of the wrongdoing alleged herein.

14.     Plaintiff Venkata Chotneeru has owned shares of bluebird continuously since March of 2020, and, therefore, held shares at the time of the wrongdoing alleged herein.

15.     Nominal Defendant bluebird is a Delaware corporation with its principal executive offices located at 60 Binney Street, Cambridge, Massachusetts 02142. bluebird common stock trades on the NASDAQ under the ticker symbol "BLUE."

16.     Defendant Chip Baird ("Baird") has served as the Company's Chief Financial Officer ("CFO") at all relevant times. Defendant Baird is a defendant in the Securities Class Action.

17.     Defendant Nick Leschly ("Leschly") is a director of the Company and has served as bluebird's President and Chief Executive Officer ("CEO") since September 2010. Previously, Defendant Leschly served as the Interim Chief Executive Officer from March 2010 to September 2010.  Defendant Leschly is a defendant in the Securities Class Action.

18.     Defendant Mark Vachon ("Vachon") is a director of the Company and has been since July 2014.  Defendant Vachon is the Chairperson of the Audit Committee.

19.     Defendant John O. Agwunobi ("Agwunobi") is a director of the Company and has been since June 2017. Defendant Agwunobi is the Chairperson of the Nominating and Corporate Governance Committee.

20.     Defendant Wendy L. Dixon ("Dixon") is a director of the Company and has been since April 2013. Defendant Dixon is a member of the Audit Committee and the Compensation Committee.

21.     Defendant Daniel S. Lynch ("Lynch") is a director of the Company who has served as Chairman of the Board since May 2011. Defendant Lynch is the Chairperson of the

Compensation Committee. He is also a member of the Audit Committee.

22.     Defendant Denice Torres ("Torres") is a director of the Company and has been since August 2020. Defendant Torres is a member of the Compensation Committee and the Nominating and Corporate Governance Committee.

23.     Defendant William R. Sellers ("Sellers") is a director of the Company and has been since September 2019.

24.     Defendant Douglas A. Melton, Ph.D. ("Melton) was a director of the Company from June 2017 until September 30, 2020. He was a member of the Nominating and Corporate Governance Committee.

25.     Defendants Baird, Leschly, Vachon, Agwunobi, Dixon, Lynch, Torres, Ibrahim, Sellers, and Melton are herein referred to as the "Individual Defendants." Nominal Defendant bluebird together with the Individual Defendants are herein referred to as the "Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

26.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

27.     The Individual Defendants, because of their positions of control and authority as

directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

28.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of bluebird were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     conduct the affairs of the Company in a lawful, efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

29.     Each Individual Defendant, as a director and/or officer, owed to the Company and its stockholders the fiduciary duties of loyalty, good faith and candor in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a conscious disregard for their duties to the Company and its stockholders that Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

30.     In addition, the Company has also adopted a Code of Business Conduct and Ethics (the "Code"). The Code's Purpose and Overview Section states:

> At bluebird we fly for the possibility of fuller, healthier lives. While our primary focus is patients and families, we're also serving our employees, our customers and partners, and the broader society in which we live.
>
> In that spirit, we have worked hard to build our reputation and have the conviction and courage to do what's right in an industry that too often resists change. It is everyone's responsibility to work with integrity to protect our reputation, advance our mission, and help our company thrive in today's complex competitive business environment.
>
> To help you, we have created this Code of Business Conduct and Ethics ("the Code"), which offers guidance to help you:
>
> » Comply with applicable laws, regulations, and company policies.
>
> » Promote integrity and the highest standards of ethical conduct.
>
> » Address common ethical situations you could encounter in your work.
>
> » Avoid anything improper in connection with bluebird's business activities.
>
> All employees of bluebird and its subsidiaries, including corporate officers and members of our Board of Directors, are required to read, understand, and follow our Code. Business partners, such as vendors, consultants, and temporary employees who serve as an extension of bluebird are also expected to follow the Code, as well as any applicable contractual provisions.
>
> bluebird is committed to compliance with all laws, rules, and regulations that apply

to our business, so it is important to be aware of different laws and customs that apply in the countries where we operate. If any provision of our Code conflicts with a local law or requirement, you should seek guidance from your manager or Compliance.

31.     The Code goes on to state in pertinent part:

Each of us must be accountable and take responsibility for acting with integrity, even when this means making difficult choices. Meeting our responsibilities is what enables us to succeed and grow.

» Always act in a professional, honest, and ethical manner when acting on bluebird's behalf.

» Know the information in the Code and written company policies and pay particular attention to the topics that apply to your specific job responsibilities.

» Complete all required employee training in a timely manner and keep up-to-date on current standards and expectations.

» Report concerns about possible violations of our Code, our policies, or the law to your manager, an executive, or any of the resources listed in this Code.

» Cooperate and tell the truth when responding to an investigation or audit, and never alter or destroy records in response to an investigation or when an investigation is anticipated.

Remember: No reason, including the desire to meet business goals or helping a patient in need, should ever be an excuse for violating our Code, our policies, or the law.

\*          \*          \*

Violating our Code, our policies, or the law, or encouraging others to do so, exposes bluebird to liability and puts our reputation at risk. If an ethics or compliance problem does occur, we are all accountable to report it so that an effective solution can be developed. You should also understand that violations of laws or regulations may result in legal proceedings and penalties including, in some circumstances, criminal prosecution.

\*          \*          \*

As a public company, bluebird is committed to meeting its obligations of full, fair, and timely disclosure in all reports and documents that describe our business and financial results, and other public communications.

32.     In addition, as noted in the Company's DEF 14A filed with the SEC on April 30,

2021 (the "2021 Proxy"), the Board plays an enhanced role for the Company when it comes to risk

management:

> Our Board performs its oversight role by using several different levels of review.
> Our Chair meets regularly with our Chief Executive Officer and other executive
> officers to discuss our strategy and material risks. Members of senior management
> attend the quarterly Board meetings, present on strategic matters involving our
> business, and are available to address any questions or concerns raised by the Board
> on risk management-related issues and any other matters. Our Board reviews the
> risks, including any environmental or social governance risks, associated with our
> business strategies periodically throughout the year as part of its consideration of
> undertaking any such business strategies.

> Each of the committees of our Board also oversees the management of our risk that
> falls within the committee's areas of responsibility. In performing this function,
> each committee has full access to management, as well as the ability to engage
> advisors. The Audit Committee oversees our enterprise risk management program
> as it relates to our operations by identifying the primary risks associated with our
> operations and corporate functions, receiving periodic updates on activities to
> manage such risks, and providing reports to the Board regarding such activities. In
> carrying out its responsibilities for the oversight of operational risk management,
> members of the Audit Committee regularly discuss with management our risk
> exposures in the areas of financial reporting, internal controls, information security,
> and our legal and regulatory compliance programs, and the steps we take to manage
> them. Our Chief Financial Officer, our Chief Operating and Legal Officer, our
> Chief Compliance Officer all periodically provide reports to the Audit Committee
> and are responsible for identifying, evaluating and implementing risk management
> controls and methodologies to address any identified risks. Our Audit Committee
> also meets privately with representatives from our independent registered public
> accounting firm as part of its oversight of our risk management. The Compensation
> Committee assists the Board in fulfilling its oversight responsibilities with respect
> to the management of risks arising from our compensation policies and programs
> and succession planning for our executive officers, and evaluates potential risks
> associated with independent director compensation for consideration by the full
> Board. The Nominating and Corporate Governance Committee assists the Board in
> fulfilling its oversight responsibilities with respect to the management of risks
> associated with Board organization, membership and structure, succession planning
> for our directors, and corporate governance.

33.    The 2021 Proxy also states the following when it comes to the Board's Audit

Committee:

> The Audit Committee's responsibilities include:

> • appointing, approving the compensation of, and assessing the independence

10

of our independent registered public accounting firm;

- approving audit and permissible non-audit services, and the terms of such services, to be provided by our independent registered public accounting firm;

- reviewing the audit plan (both internal and external) with the independent registered public accounting firm and members of management responsible for performing our internal audit and preparing our financial statements;

- reviewing and discussing with management and the independent registered public accounting firm our annual and quarterly financial statements and related disclosures, including critical audit matters as well as critical accounting policies and practices used by us;

- reviewing the adequacy of our internal control over financial reporting;

- overseeing the qualifications, independence and performance of our internal audit function;

- establishing policies and procedures for the receipt and retention of accounting-related complaints and concerns;

- recommending, based upon the Audit Committee's review and discussions with management and the independent registered public accounting firm, whether our audited financial statements shall be included in our Annual Report on Form 10-K;

- monitoring the integrity of our financial statements and our compliance with legal and regulatory requirements as they relate to our financial statements and accounting matters;

- preparing the Audit Committee report required by the rules of the SEC to be included in our annual proxy statement;

- reviewing all related party transactions for potential conflict of interest situations and approving all such transactions;

- monitoring compliance with our investment policy;

- overseeing our enterprise risk assessment program; and

- reviewing quarterly earnings releases.

34.     The Individual Defendants failed to maintain the standards laid out by both the law and the Company, resulting in the breaches of fiduciary duty and the violations of the Exchange

Act described herein.

## SUBSTANTIVE ALLEGATIONS

### BACKGROUND

35.     bluebird is a biotechnology company that engages in researching, developing, and commercializing transformative gene therapies for severe genetic diseases and cancer. The Company's gene therapy programs include, among others, LentiGlobin (bb1111) for the treatment of SCD.

36.     In May 2020, in the midst of the COVID-19 pandemic, bluebird announced that the Company expected to submit a BLA to the FDA for LentiGlobin for SCD in the second half of 2021.

### THE INDIVIDUAL DEFENDANTS CAUSE THE COMPANY TO ISSUE MATERIALLY FALSE AND MISLEADING STATEMENTS MADE DURING THE RELEVANT PERIOD

37.     On May 11, 2020, the Company issued a press release providing an operational and business update and reporting its first quarter 2020 financial results (the "First Quarter 2020 Press Release"). The First Quarter 2020 Press Release promoted the Company's anticipated BLA submission for LentiGlobin for SCD, reporting that the Company had a "general agreement with [the] FDA that the clinical data package required to support a BLA submission for LentiGlobin™ for [SCD] will be based on data from a portion of patients in the HGB-206 study Group C that have already been treated," and that the Company planned "to seek an accelerated approval and expects to submit the [BLA] for [SCD] in the second half of 2021," despite "anticipat[ing] additional guidance from FDA regarding the commercial manufacturing process, including suspension lentiviral vector."

38.     The First Quarter 2020 Press Release also quoted Defendant Leschly, who assured the market that the Company had accounted for COVID-19's impact on its ongoing operations,

including the BLA submission for LentiGlobin for SCD. Specifically, Defendant Leschly touted that the Company "ha[s] alignment with FDA on [its] clinical data package and filing path for LentiGlobin for [SCD], which accelerates [its] planned base case filing timeline into 2021"; that "after a rigorous review of all operational plans to reflect COVID-19 uncertainties and recent program shifts, [the Company] ha[s] prioritized [its] core . . . programs to drive . . . filings in 2021 for [*inter alia*] . . . SCD"; that "[t]his prioritization effort and operational review has led to significant efficiencies . . . across [the] company"; and that "[t]he fundamentals of [the Company's] business remain sound and [its] newly revised operating plan enables [it] to execute on the 2022 vision while putting [it] on a path towards financial sustainability."

39.     On May 11, 2020, the Company also hosted a conference call with investors and analysts to discuss its first quarter 2020 results (the "First Quarter 2020 Conference Call"). In his prepared remarks on that call, Defendant Leschly stated that "[o]n the [SCD] front, [the Individual Defendants are] happy to share that [they] have reached general alignment with the FDA on an accelerated approval path for LentiGlobin in [SCD] with plans to file for approval in the second half of 2021," and that, "[o]verall, 2021 is on track to deliver several major milestones, including . . . the US filing[] of . . . LentiGlobin in sickle cell."

40.     In addition, on the First Quarter 2020 Conference Call, in response to a Guggenheim Securities LLC analyst question regarding manufacturing for LentiGlobin, Defendant Leschly further touted that the Individual Defendants were "quite confident [in] the combination of the various forms of manufacturing," and that the Individual Defendants "wouldn't go out and try to commit to a regulatory timeline if [they] didn't feel that [they] could deliver on that demand" because it "would be a really, really hard thing for the patient population, not to mention bluebird, if [they] were to do that," and that the Individual Defendants were "quite

confident in the ramp and a pretty broad range in the ramp as [they] get going in US," reiterating

that, "quite honestly, [they] would not be signing up for a regulatory timeline or a range of timeline

if [they] didn't feel that [they] had the execution infrastructure behind it."

41.     On the First Quarter 2020 Conference Call, in response to an Evercore ISI analyst

who said that he was "surprised it's going to take over a year given everything we know now" for

the LentiGlobin SCD BLA filing, and questioning whether the "filing timeline assume[s] that some

. . . follow-up can be submitted as a supplement to an amendment," Defendant Leschlyassured

those on the call that the Company was "liberate[d]" to "move quite aggressively" despiteCOVID-

19:

> [A]s you think about some of the original plan, right, and you look at HGB-210 and
> you look at that, the timing there given also some of the complexity going on in the
> world right now as it relates to the [COVID-19] pandemic and the enrollment time
> frames that that brings, this really liberates us to move quite aggressively despite
> some of those changes given how far along we already were on HGB-206. So, I
> think between the data and the strategy and the willingness and the collegiality that
> the agency's showing on this, it's actually a tremendous – at least from our
> perspective, we believe is a tremendously positive outcome.

42.     That same day, the Company filed its quarterly report on Form 10-Q with the SEC,

reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the

"First Quarter 2020 10-Q").  The First Quarter 2020 10-Q touted that "[b]ased on discussions with

the FDA," the Company "believe[s] that [it] may be able to seek accelerated approval for

LentiGlobin for SCD in the [U.S.] on the basis of clinical data from Group C of [their] ongoing

HGB-206 clinical study, with a potential first submission in the second half of 2021"; and that the

Individual Defendants adjusted "the timing of investment in ongoing clinical studies to reflect

COVID-19 related delays in enrollment."

43.     Appended as an exhibit to the First Quarter 2020 10-Q were signed certifications

pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Leschly and Baird

certified that "the [First Quarter 2020 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "the information contained in the [First Quarter 2020 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

44.     On August 5, 2020, the Company issued a press release announcing its second quarter 2020 financial results and recent operational progress (the "Second Quarter 2020 Press Release"). The Second Quarter 2020 Press Release stated that the Company had "treated the first sickle cell patient with drug product manufactured with suspension-based lentiviral vector (sLVV)," which "is intended to allow for larger scale and more efficient manufacturing of LVV," and that "[t]he company intends to submit data supporting the use of sLVV to the FDA as part of its submission for regulatory approval of LentiGlobin™ gene therapy for SCD in the second half of 2021."

45.     In addition, the Second Quarter 2020 Press Release touted that "[o]n June 12, 2020, the Company bio presented new data showing a near elimination of [SCD]-related vaso-occlusive crises and acute chest syndrome in the phase 1/2 clinical study of bluebird bio's LentiGlobin™ gene therapy for [SCD] at 25th EHA [European Hematology Association] Congress," and that the Company "plan[s] to submit its BLA to the FDA based on an analysis of clinical data from this study," while reiterating that bluebird "continues to plan to submit the U.S. BLA for SCD in the second half of 2021."

46.     On August 5, 2020, the Company filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "Second Quarter 2020 10-Q"). The Second Quarter 2020 10-Q contained substantively the same statements as referenced in ¶42, regarding the Company's anticipated BLA submission for

LentiGlobin for SDA in the second half of 2021 based on the Company's discussions with the FDA, and Defendants' accounting for COVID-19 related delays.

47.     Appended as an exhibit to the Second Quarter 2020 10-Q were substantively the same SOX certifications as referenced in ¶43, signed by Defendants Leschly and Baird.

48.     The statements referenced in ¶¶37-47 were materially false and misleading because the Company made false and/or misleading statements, as well as failed to disclose material adverse facts about its business, operations, and compliance policies. Specifically, the Company made false and/or misleading statements and/or failed to disclose that: (a) data supporting the Company's BLA submission for LentiGlobin for SCD was insufficient to demonstrate drug product comparability; (b) the Company downplayed the foreseeable impact of disruptions related to the COVID-19 pandemic on the Company's BLA submission schedule for LentiGlobin for SCD, particularly with respect to manufacturing; (c) as a result of all the foregoing, it was foreseeable that the Company would not submit the BLA for LentiGlobin for SCD in the second half of 2021; and (d) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **THE TRUTH EMERGES**

49.     On November 4, 2020, the Company issued a press release reporting its third quarter 2020 financial results and highlighting operational progress (the "Third Quarter 2020 Press Release"). Therein, the Company disclosed that it would no longer apply for FDA approval of its LentiGlobin product as a treatment for SCD in the second half of 2021 as expected.  Instead, citing "feedback" from the FDA requiring the Company to provide additional data "to demonstrate drug product comparability" for LentiGlobin for SCD, "alongside COVID-19 related shifts and contract manufacturing organization COVID-19 impacts," the Company adjusted its submission timing to late 2022. The Third Quarter 2020 Press Release stated:

[BLA] SUBMISSION - Today, bluebird bio announces confirmation of its general agreement with the [FDA] that the clinical data package required to support a BLA submission for LentiGlobin™ for [SCD] (bb1111) will be based on data from a portion of patients in the HGB-206 study Group C that have already been treated. bluebird bio is also announcing today that it has reached general agreement with FDA on its path to transition to commercial manufacturing using an analytical comparability strategy, including suspension-based lentiviral vector (sLVV) . . . However, FDA requested the use of drug product manufactured from [SCD] patient cells in addition to healthy donors as well as commercial lentiviral vector to demonstrate drug product comparability. Given this feedback, alongside COVID-19 related shifts and contract manufacturing organization COVID-19 impacts, bluebird is adjusting its submission timing to late 2022.

50.    On this news, the Company's stock price dropped $9.72 per share, or 16.6%, to close at $48.83 per share on November 5, 2020.

## DAMAGES

51.    As a result of the Individual Defendants' wrongful conduct, bluebird disseminated false and misleading statements and omitted material information to make such statements not false and misleading when made. The improper statements have devastated bluebird's credibility. The Company has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

52.    Furthermore, aside from ruining the Company's reputation for honesty, integrity, and aptitude, the Individual Defendants have exposed the Company to very expensive legal costs to defend, investigate, and pay judgment or settlement in the Securities Class Action.

53.    As a direct and proximate result of the Individual Defendants' actions as alleged above, bluebird's market capitalization has been substantially damaged, losing millions of dollars in value as a result of the conduct described herein.

54.    Moreover, these actions have irreparably damaged bluebird's corporate image and goodwill. For at least the foreseeable future, bluebird will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior

and have misled the investing public, such that bluebird's ability to raise equity capital or debt on favorable terms in the future is now impaired.

### PLAINTIFFS' DEMAND AND DERIVATIVE ALLEGATIONS

55.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

56.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

57.     Plaintiffs are owners of bluebird common stock and were owners of bluebird common stock at all times relevant hereto.

58.     Plaintiffs will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

59.     As a result of the facts set forth herein, Plaintiffs have not made any demand on the bluebird Board to institute this action against the Individual Defendants. Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

60.     At the time this action was commenced, the Board consisted of eight directors: Defendants Leschly, Vachon, Agwunobi, Dixon, Lynch, Sellers, and Torres (the "Director Defendants"), and non-defendant Ramy Ibrahim, M.D. All seven members of the Board are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

**DEMAND IS FUTILE AS TO THE DIRECTOR DEFENDANTS BECAUSE THEY EACH FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

61.     The Director Defendants all face a substantial likelihood of liability for their

individual misconduct. The Director Defendants were directors throughout the relevant time of the false and misleading statements, and as such had a fiduciary duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company concerning its business, operations, prospects, internal controls, and financial statements were accurate.

62.     Moreover, the Director Defendants, as directors owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, they knowingly and consciously reviewed, authorized and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

63.     The Director Defendants' conscious and knowing making or authorization of false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of bluebird to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. This is something they will not do. For this reason demand is futile as to the Director Defendants.

64.     Additionally, each of the Director Defendants received meaningful financial

benefits for serving on the Board.  Specifically, during 2020, Defendant Vachon received $277,056 in compensation, Defendant Agwunobi received $263,241 in compensation, Defendant Dixon received $275,450 in compensation, Defendant Lynch received $404,611 in compensation, Defendant Sellers received $257,972 in compensation, and Defendant Torres received $341,438 in compensation, even though she did not join the Board until August 10, 2020.

65.     To this end, on March 30, 2020, a derivative action was brought in the Delaware Chancery Court captioned *Alvarado v. Lynch, et al.*, C.A. No.: 2020-0237, alleging that for the years 2015 – 2019 the Company's outside directors were being "grossly overcompensated" and "paid far beyond the range of compensation of their peers at similarly sized, publicly traded companies."

66.     As noted in the *Alvarado* complaint, "[i]n 2018, the Company's Non-Employee Director Defendants were paid an average of $748,652 per director – an amount significantly exceeding the average total director compensation for 2018 for non-employee directors sitting on the board of a Top 200 Company or a large-cap company with a market capitalization of more than $5 billion. bluebird bio, however, is neither a Top 200 Company nor a large-cap company."

67.     The Chancery Court denied defendants' motion to dismiss in connection with the years 2016 – 2019.

68.     Defendants Vachon, Agwunobi, Dixon, and Lynch were all outside directors during at least some portion of this time period and were "grossly overcompensated." Moreover, Defendants Lynch and Dixon, as members of the Board's Compensation Committee, approved the excessive compensation. Both the receipt, and in the case of Lynch and Dixon the approval, of the excessive compensation means Defendants Vachon, Agwunobi, Dixon, and Lynch each lack the independence and disinterestedness required to impartially consider a demand on the Board.

**DEFENDANT LESCHLY LACKS INDEPENDENCE**

69.     Defendant Leschly is not disinterested for purposes of demand futility because his principal occupation is CEO and President of bluebird. According to the Company's SEC filings, in 2018, 2019, and 2020, Leschly received total compensation of $23,962,220, $13,153,566, and $6,241,647, respectively. These amounts are meaningful to Defendant Leschly. As such, Leschly could not independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would have exposed him to liability and threatened his livelihood.

70.     To that end, the 2021 Proxy admits that Defendant Leschly lacks independence due to his positions with the Company.

71.     Defendant Leschly is also incapable of considering a demand to commence and vigorously prosecute this action because he faces additional substantial likelihood of liability as he is a named defendant in the Securities Class Action.

**DEMAND IS FUTILE AS TO DEFENDANTS VACHON, LYNCH AND DIXON BECAUSE AS MEMBERS OF THE AUDIT COMMITTEE THEY FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

72.     Defendants Vachon, Lynch, and Dixon, as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements, and allowed the Individual Defendants to repeatedly make false and misleading statements to the investing public. More specifically, as members of the Audit Committee, Defendants Vachon, Lynch, and Dixon were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, Defendants Vachon, Lynch, and Dixon, as members of the Audit Committee, failed to ensure the integrity of the Company's financial statements and financial reporting process, the Company's systems of internal accounting and financial controls and other financial information provided by the Company, as required by the Audit Committee Charter. For this reason, demand is futile as to Defendants Vachon, Lynch, and

Dixon.

73.     As noted in the 2021 Proxy:

The Audit Committee oversees our enterprise risk management program as it relates to our operations by identifying the primary risks associated with our operations and corporate functions, receiving periodic updates on activities to manage such risks, and providing reports to the Board regarding such activities. In carrying out its responsibilities for the oversight of operational risk management, members of the Audit Committee regularly discuss with management our risk exposures in the areas of financial reporting, internal controls, information security, and our legal and regulatory compliance programs, and the steps we take to manage them. Our Chief Financial Officer, our Chief Operating and Legal Officer, our Chief Compliance Officer all periodically provide reports to the Audit Committee and are responsible for identifying, evaluating and implementing risk management controls and methodologies to address any identified risks. Our Audit Committee also meets privately with representatives from our independent registered public accounting firm as part of its oversight of our risk management.

74.     As such, Defendants Vachon, Lynch, and Dixon were in a unique position to not only know about the Individual Defendants' false and misleading statements, but to also prevent them. Defendants Vachon, Lynch, and Dixon failed to do so, leaving them each facing a substantial likelihood of liability.

75.     Defendants Vachon, Lynch ad Dixon breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failed to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  Therefore, Defendants Vachon, Lynch and Dixon face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

## COUNT I

### AGAINST DEFENDANTS LESCHLY AND BAIRD FOR VIOLATIONS OF SECTIONS 10(B) AND 21D OF THE EXCHANGE ACT FOR FEDERAL CONTRIBUTION AND INDEMNIFICATION

76.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth

above, as though fully set forth herein.

77.     This claim is brought derivatively on behalf of the Company against Defendants Leschly and Baird for contribution and indemnification.

78.     Defendants Leschly and Baird herein have been named as defendants in the Securities Class Action, as alleged herein.

79.     Defendants Leschly and Baird had a duty not to defraud the investing public by the dissemination of materially false and misleading statements.

80.     Although Plaintiffs do not adopt the allegations of wrongdoing that are alleged in the Securities Class Action as their own, if the Company is deemed to have violated the federal securities laws, and incurs damages therefor, such damages should not be disproportionately borne by the Company, and Defendants Leschly and Baird are liable to the Company for contribution and indemnification.

81.     Accordingly, Plaintiffs assert this claim derivatively for contribution and indemnification, as provided by federal statute.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

82.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

83.     The Individual Defendants owed and owe bluebird fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe bluebird the highest obligation of loyalty, good faith, due care, oversight, fair dealing, and candor.

84.     All of the Individual Defendants violated and breached their fiduciary duties of loyalty, good faith, due care, oversight, fair dealing, and candor.

85.     Each of the Individual Defendants had actual or constructive knowledge that

violated their duty of good faith by knowingly causing and/or recklessly allowing the Company to make false and misleading statements and/or fail to disclose that: (a) data supporting the Company's BLA submission for LentiGlobin for SCD was insufficient to demonstrate drug product comparability; (b) the Company downplayed the foreseeable impact of disruptions related to the COVID-19 pandemic on the Company's BLA submission schedule for LentiGlobin for SCD, particularly with respect to manufacturing; (c) as a result of all the foregoing, it was foreseeable that the Company would not submit the BLA for LentiGlobin for SCD in the second half of 2021; and (d) as a result, the Company's public statements were materially false and misleading at all relevant times.

86.     The Individual Defendants also caused or allowed bluebird to lack requisite internal controls, and, as a result, the Company regularly made false and misleading statements regarding bluebird's financial condition and future financial growth.

87.     The Individual Defendants failed to supervise, and to exert internal controls over, and consciously disregarded responsibilities involving the Company.

88.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, bluebird has sustained significant damages.

89.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

90.     Plaintiffs, on behalf of Bluebird, have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A.      Declaring that Plaintiffs may maintain this action on behalf of the Company and that Plaintiffs are adequate representatives of the Company;

B.      Finding Defendants liable for breaching their fiduciary duties owed to the

Company;

C.      Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

D.      Awarding damages to the Company for the harm the Company suffered as a result of the Defendants' wrongful conduct;

E.      Awarding damages to the Company for Defendants Leschly and Baird's violations of Sections 10(b) and 21D of the Exchange Act;

F.      Awarding Plaintiffs the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

G.      Awarding such other and further relief as is just and equitable

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 8, 2021                                      Respectfully submitted,


                                                        */s/ David Pastor*
                                                        David Pastor (BBO # 391000)
                                                        dpastor@pastorlawoffice.com
                                                        **PASTOR LAW OFFICE LLP**
                                                        63 Atlantic Avenue, 3d Floor
                                                        Boston, MA 02110
                                                        Telephone: (617) 742-9700

**OF COUNSEL:**

**HYNES & HERNANDEZ, LLC**
Michael J. Hynes
mhynes@hh-lawfirm.com
Ligaya T. Hernandez
lhernandez@hh-lawfirm.com
101 Lindenwood Drive, Suite 225
Malvern, Pennsylvania 19355
Telephone: (484) 875-3116

**BRAGAR EAGEL & SQUIRE, P.C.**
Garam Choe
choe@bespc.com
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9450

*Counsel for Plaintiffs*

**VERIFICATION**

I, Mike Graham, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint, that I have reviewed the Verified Stockholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 7, 2020

*Michael R Graham*
Michael R Graham (May 8, 2021 10:30 EDT)

Mike Graham

**VERIFICATION**

I, Soumya Vemuri, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint, that I have reviewed the Verified Stockholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 10, 2020

*Soumya Vemuri*
Soumya Vemuri (May 10, 2021 15:06 EDT)

Soumya Vemuri

**VERIFICATION**

I, Venkata Chotneeru, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint, that I have reviewed the Verified Stockholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 7, 2020

_Venkat R Chotneeru (May 7, 2021 15:18 EDT)_

Venkata Chotneeru